```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GREGORY FISHMAN,

                Plaintiff,

        -against-

METROPOLITAN TRANSPORTATION
AUTHORITY, TRIBOROUGH BRIDGE AND
TUNNEL AUTHORITY, and PETER SENESI and
THOMAS DUDA, as aiders and abettors and in their
individual and official capacities.
                Defendants.
------------------------------------------------------------X
```

**JUDGE HOLWELL**

**06 CV 14264**

**COMPLAINT**

Jury Trial Demanded



Plaintiff, GREGORY FISHMAN, by his attorneys, Leeds Morelli & Brown, P.C., complaining of Defendants herein, alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters:

## JURISDICTION AND VENUE

1. This is a civil action based upon Defendants' violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000-e, et seq.; New York State Executive Law, Human Rights Law, § 290, et seq.; 42 U.S.C. § 1983, et seq.; New York City Administrative Code §8-107, et seq.; and any other cause of action that can be inferred from the facts set forth herein.

2. Claims are brought against individual Defendants Peter Senesi and Thomas Duda pursuant to 42 U.S.C. § 1983 et seq.; and New York Executive Human Rights Law § 296

1

et seq.; and New York City Administrative Code §8-107, et seq.

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343(3), 28 U.S.C. § 1343(4). The supplemental jurisdiction of the Court (28 U.S.C. § 1367) is invoked over state and local law causes of action.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b).

5. All conditions precedent to maintaining this action have been fulfilled. Plaintiff filed a charge of discrimination with the EEOC and received a Right to Sue Letter dated November 27, 2006. See Exhibit A.

## PARTIES

6. Plaintiff, Gregory Fishman ("Plaintiff") at all times relevant to this action, was a resident and domiciliary of Nassau County. Plaintiff is now a resident and domiciliary of Tarrant County, Texas.

7. Defendant Metropolitan Transportation Authority ("MTA") was and still is a municipal corporation of the State of New York, established pursuant to New York Public Authorities Law § 1263, with its principal place of business at 347 Madison Avenue, New York, New York 10017-3739.

8. Defendant Triborough Bridge and Tunnel Authority ("TBTA") was and still is a municipal corporation of the State of New York, established pursuant to New York Public Authorities Law §552, with its principal place of business at Randalls Island, New York, New York 10035-0035.

9. Defendant Peter Senesi is a resident of Rockland County, State of New York.

10. Defendant Thomas Duda is a resident of Richmond County, State of New York.

11. Defendants Peter Senesi and Thomas Duda were, at all relevant times, and still are employed by Defendant TBTA in supervisory positions at its Queens-Midtown Tunnel facility ("QMT").

## FACTS

### Plaintiff's Employment History

12. Plaintiff commenced his employment with TBTA on December 2, 1991.

13. Plaintiff was originally employed by the TBTA in the capacity of Assistant Bridge and Tunnel Maintainer at the TBTA's QMT.

14. On December 17, 1998, Plaintiff was promoted to the position of Provisional Bridge and Tunnel Maintainer at the QMT.

15. During Plaintiff's fourteen years with TBTA, Plaintiff's job performance was exemplary.

### Religious Discrimination

16. Plaintiff is a Jewish male.

17. On September 28, 2004, Plaintiff was called into an attendance counseling meeting with Defendants Peter Senesi ("Senesi") and Thomas Duda ("Duda"). At this meeting, Plaintiff was reprimanded for his attendance record.

18. At the meeting, Plaintiff respectfully stated that his sick days were legitimate and that TBTA's scrutiny was, therefore, unjustified. In fact, Plaintiff had provided Defendants with notes from doctors for each absence. These notes had all been approved by TBTA

3

supervisors Lester Zajkowski ("Zajkowski") or Bill Dojiligko, as per TBTA policy.

19. After that meeting with Plaintiff, Senesi and Duda spoke privately. However, Plaintiff overheard Senesi call Plaintiff an "f-ing Jew."

**Failure to Promote**

20. On October 2, 2004, Plaintiff completed the written promotional exam for the position of Permanent Level II Maintainer. On October 30, 2004, Plaintiff completed the accompanying practical exam for that position.

21. Plaintiff scored well on the promotional exams and was ranked third (3rd) on the civil service list of employees eligible for promotion to Permanent Level II Maintainer.

22. On or about January 25, 2005, Senesi, acting with authority from TBTA and his supervisors, began to offer Permanent Level II Maintainer positions to employees who had taken the October 2004 promotional exams.

23. Despite Plaintiff's high ranking, Plaintiff did not receive a promotion, while his similarly situated co-worker Michael Chin Hong, ("Chin Hong") was promoted. Chin Hong is not Jewish. Furthermore, Mr. Chin Hong was ranked thirty eighth (38th) on the civil service list of eligible employees.

24. TBTA claimed that Plaintiff was not promoted because of his poor attendance record. However, Chin Hong was promoted despite being reprimanded for his attendance record.

25. Furthermore, concerns about Plaintiff's attendance record were unfounded, as Plaintiff's sick days were taken on days that he was actually physically unable to work. In each instance, Plaintiff provided Defendants with doctor's notes documenting the infirmity.

26. In addition, TBTA now claims that Plaintiff had not exhibited the requisite on-the-job

4

safety skills to be promoted. These claims are unsubstantiated and pretextual reasons proffered in order to disguise TBTA's discriminatory practices.

27. Of the fourteen QMT employees eligible for promotion following the October 2004 promotional exams, twelve were promoted by Senesi. The two employees who were not promoted were the only Jewish QMT employees, Plaintiff and Seth Schechter.

**TBTA EEO Complaint**

28. On February 20, 2005, Plaintiff sent a formal written complaint of discrimination to Gloria Colon, TBTA's Chief In-House EEO officer. That complaint described the religious discrimination to which Plaintiff believed he had been subjected. The complaint also specifically stated, *inter alia*, that Plaintiff had been denied promotion because of his religion.

**Retaliation Following EEO Complaint**

29. As a result of Plaintiff's written complaint of discrimination to TBTA's In-House EEO officer, Plaintiff was subjected to further retaliation.

30. On or about March 24, 2005, Plaintiff was demoted to Level I Maintainer with a decrease in salary. Plaintiff's annual salary was decreased approximately $8,000. Plaintiff also lost scheduled (guaranteed) overtime valued at approximately $12,000 per year.

31. In addition, on or about January 16, 2006, Plaintiff required a surgical procedure on his right knee, causing him to take sick days.

32. On or about January 24, 2006, Zajkowski asked Plaintiff to fax a doctor's note verifying Plaintiff's reason for taking these sick days. Plaintiff complied with Zajkowski's request.

33. On or about February 27, 2006, Zajkowski informed Plaintiff that Plaintiff's knee must be

5

examined by MTA's physician, Dr. Nadig, in order for Plaintiff to be compensated for his sick days.

34. Because Dr. Nadig was unavailable, Dr. Nadig's assistant examined and completed the MTA's Occupational Health Decisions form. When completed, the form indicated that Plaintiff was not fit for work as a result of his knee injury and referred Plaintiff to Plaintiff's personal physician for additional care.

35. Despite this medical recommendation, MTA's Human Resources informed Plaintiff that Plaintiff was required to return to work the following day.

36. MTA's Human Resources also stated that, unless Plaintiff produced a doctor's note documenting that his absences were related to his knee surgery, he would not be compensated for those sick days. Similarly-situated employees who were not in Plaintiff's protected classes were not subjected to such scrutiny.

37. Nonetheless, Plaintiff provided MTA's Human Resources with the requested doctor's note. MTA's Human Resources, however, found this note insufficient and asked Plaintiff for permission to have MTA's doctor contact Plaintiff's doctor directly.

38. Additionally, MTA's Human Resources ordered Plaintiff to return to work despite his substantial knee injury.

39. Thereafter, MTA continued to subject Plaintiff to unjustified scrutiny relative to Plaintiff's request for sick days.

40. On March 3, 2006, Plaintiff learned that TBTA had not received any documentation from Zajkowski or from MTA Human Resources of the sick days Plaintiff had requested because of his knee surgery. In fact, TBTA had not received the doctor's note which had

been faxed to Zajkowski on January 24, 2006. As a result, Plaintiff was not compensated for the sick days he took related to his knee surgery.

**Result of Defendants Illegal Conduct**

41. Due to the harassment and retaliation Plaintiff faced, Plaintiff's working conditions have, throughout the course of his employment, been intolerable. The harassment and retaliation were also contributing factors in Plaintiff's resigning his employment with Defendant TBTA.

42. As a proximate result of the aforementioned conduct, Defendants caused Plaintiff to suffer loss of and/or reduction in earnings, guaranteed overtime, and accrued benefits, among other harms. As a result of this loss of and/or reduction in Plaintiff's wages, guaranteed overtime, and benefits, Plaintiff and his family could not afford their housing expenses, so they were forced to sell their home and relocate.

43. Because of the harassment and discrimination by Defendants, Plaintiff and his family suffered great emotional and physical harms.

## CLAIMS FOR RELIEF AS AGAINST MUNICIPAL DEFENDANTS

44. Defendants TBTA and MTA (collectively, "Municipal Defendants") discriminated against Plaintiff because of his religion and/or creed in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, et seq., in violation of New York State Executive Law § 296, et seq. and in violation of New York City Administrative Code § 8-107 et seq.

45. Municipal Defendants discriminated against Plaintiff because of and in retaliation against his protected activities, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000-e, et seq., in violation of New York State Executive Law 296, et seq. and in violation of New York City Administrative Code § 8-107 et seq.

46. Municipal Defendants, while acting under color of state law, deprived Plaintiff of his constitutional rights, as secured by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983. Municipal Defendants have intentionally committed, condoned, and/or were deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights in that Municipal Defendants' custom or practice of discriminating and/or retaliating against Plaintiff was based on his religion.

47. Officials of Municipal Defendants intentionally committed, condoned, or were deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights. Such deliberate indifference may be inferred in the following ways:

   A. Municipal Defendants had a custom or practice of harassing Plaintiff based on his religion. The discriminatory practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers.

B. Supervisors failed to properly investigate and address allegations of discrimination.

C. Inadequate training/supervision was so likely to result in the discrimination, that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

D. Policymakers engaged in and/or tacitly condoned the discrimination.

## CLAIMS FOR RELIEF AS AGAINST INDIVIDUAL DEFENDANTS

Defendants Senesi and Duda aided, abetted, incited, compelled and/or coerced the aforementioned unlawful conduct in violation of 42 U.S.C. § 1983, et seq., in violation of New York State Executive Law § 296 et seq., and in violation of New York City Administrative Code § 8-107 et seq.

WHEREFORE, Plaintiff demands judgment against all Defendants in the form of and/or for compensatory, emotional, physical, and punitive damages (against the individuals under 42 U.S.C. § 1983), lost pay, front pay, injunctive relief, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled, including, but not limited to, reinstatement and a permanent injunction enjoining all Defendants and their agents from any further actions abridging Plaintiff's rights. Plaintiff demands a trial by jury.

Dated: Carle Place, New York
       December 8, 2006

LEEDS MORELLI & BROWN, PC
*Attorneys for Plaintiff*
One Old Country Road, Suite 347
Carle Place, New York 11514

_____
Matthew S. Porges (MP-5826)

Exhibit A

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Gregory Fishman<br>9836 Crawford Farms Dr.<br>Keller, TX 76248 | From: | New York District Office - 520<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ]  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2005-03146 | Holly M. Woodyard,<br>Investigator | (212) 336-3643 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other (briefly state)    **Charging Party to Pursue Matter in Federal Court.**

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____    11/27/06
Spencer H. Lewis, Jr.,                 (Date Mailed)
Director

Enclosures(s)

cc:  MTA Bridges & Tunnels              Christopher E. Chang, Esq.
     2 Broadway                         140 Broadway 46th Fl.
     New York, NY 10004                 New York, NY. 10005
     Attn: Michael C. Ascher